Jackson, *ex dem.* Vandeuzen and others, *against* Scissam.

THIS was an action of *ejectment*, for land in *Kinderhook*, in the county of *Columbia.* The cause was tried before the *Chief Justice*, at the *Columbia* circuit, the 17th *December*, 1806.

The plaintiff proved, that in the year 1778, *Johannes Huyck, Lucas Goes, John D. Goes, William Klaw,* and *Burger Huyck,* being freeholders and inhabitants of the county of *Kinderhook*, took possession of a tract of land, containing about 400 acres, comprising the premises in question, by cutting a possession fence, and lopping bushes round the tract : at which time no person was in possession of the premises, which are situated within the *Kinderhook* patent ; that two years afterwards the same persons renewed their possessions, and that they cut firewood and fencing materials on the land, but none of them lived on the land, or cultivated any part of it ; that the greatest part of the land was held and cultivated by persons in opposition to the claim or possession above stated.

Several witnesses testified, that the proprietors above named had, at several times, particularly in 1786 and 1790, renewed the possession-fence, and had cut wood in various parts of the inclosed tract; and it appeared that at the time of the trial, the lessors of the plaintiff had various actual possessions on the tract, amounting to 171 acres.

The plaintiff then produced in evidence the last will and testament of *John D. Goes*, one of the proprietors, dated the 23d *January*, 1789, by which he empowered his executors, therein named, to sell his real estate ; a deed from *John D. Goes* to *William Pulen*, one of the lessors of the plaintiff, dated the 4th *May*, 1792, for an undivided sixth part of the tract of land above mentioned ; a deed from *Johannes Huyck*, another of the proprietors, to *Jacob Vandeuzen*, another of the lessors of the plaintiff, for an

An acknowledgment by a person, under whom the defendant in ejectment claims to hold the land, that he went into possession under the lessors of the plaintiff, is conclusive against him, as to the tenancy.

NEW-YORK,
Nov. 1808.

Jackson
v.
Scissam.

undivided sixth part of the same tract; the last will and testament of *Lucas Goes*, dated the 25th *August*, 1803, devising all his real estate to his executors therein named, two other lessors of the plaintiff; a deed from *Peter Van Beuren*, dated 7th *September*, 1804, to *William Pulen*, one of the lessors of the plaintiff, for an undivided sixth part of the said tract ; a deed of surrender from *Samuel Van Huyck*, to the lessors of the plaintiff, of 16 acres of land, part of the said tract, dated 23d *November*, 1805.

It was admitted that *William Klaw* died in 1806 ; and his heirs are also lessors of the plaintiff.

The plaintiff also produced the *Kinderhook*, or general patent, as it is called, dated in 1686, and offered to prove, that no partition of the patent had ever been made, and that the freeholders and inhabitants of the town, universally, held their lands pursuant to possessions originally taken, in the same manner as the possession under which the lessors of the plaintiff claim ; but this evidence was overruled by the judge.

It was proved that one *Samuel Smith* occupied the premises in question, and that the defendant came into possession under him ; that while *Smith* was in possession, he said that he held under *Lucas Goes* and *Andries Klaw*, a son of *William Klaw* ; that in 1790, or 1791, when *Smith* first entered on the premises, he was warned off, when *Smith* said, that he settled under *William Klaw*, one of the proprietors.

It was also proved, that both *Smith* and *William Klaw*, when *Smith* first settled on the premises, declared that *Smith* was to have the premises for six years, and to pay twelve pounds, and to be compensated for his improvements at the end of the term. Several witnesses also testified to similar declarations of *Smith*.

The defendant produced a deed from *Samuel Smith*, to him, dated the 29th *April*, 1799, for the consideration of 300*l.* with full covenants. *Smith*, having been released by the defendant, was admitted as a witness, and testified, that he never settled under *Klaw*, nor had any leave from

him, nor had ever said that he had settled under him ; that he cleared the land himself, except a small part previously cleared by one *Peter H. Gardinier;* and that he had known the premises about 16 years ; he also proved a deed from *Gardinier* to him, dated in *August,* 1790 ; that he built a shop on the premises, and had lived quietly thereon for 8 years, without any demand of rent being made. *Gardinier* also testified, that he once lived near the premises, and gave the deed to *Smith;* that *William Klaw* was his next neighbour, and never complained of the sale, and knew that he had cleared a part of the premises before he sold them to *Smith.*

Another witness testified that six years ago, *William Klaw* told him that *Smith* erred in selling the land, for it belonged to *Peter H. Gardinier.*

The Chief Justice charged the jury, that the *Kinderhook* patent had no relation to the cause : that it gave no right to the lessors of the plaintiff to take possession, nor did they derive any right from the possession fence, as it was called, or the renewal of it ; that the proof of the tenancy of *Smith* was not sufficient, admitting even that he made the declaration stated by the witnesses ; that there must be either a *lease,* or a *payment of rent,* to constitute a tenancy. The jury, under the direction of the judge, found a verdict for the defendant.

A motion was made to set aside the verdict, and for a new trial, on the ground of the misdirection of the judge.

*Van Beuren* and *E. Williams,* for the plaintiff. 1. Evidence of possession must be according to the subject matter. Evidence of the possession of a house will be stronger and more decisive, than that of a piece of wood-land. The inclosing of land, followed by repeated acts of ownership, ought, according to the circumstances of the case, to be sufficient evidence of a possessory title. If the acts of possession are such as to afford public and notorious evidence of ownership, it is all that can reasonably be required.

NEW-YORK,
Nov. 1808.

Jackson
v.
Scissam.

* 2 *Johns. Rep.*
230.

† 2 *Johns. Rep.*
22.    3 *Burr.*
1563.

The case of *Jackson*, ex dem. *Hardenbergh* and others, v. *Schoonmaker*,* may, perhaps, be cited to the contrary ; but that case was different from the present.   There, the defendant offered to establish an adverse possession, taken with a view to defeat a title ; and the court, in favour of right, very properly required the highest evidence of possession.   Here was evidence of a previous possession, and under the *Kinderhook* patent, such possession would be lawful.   It was not necessary to show a possession for 20 years.†

The question, in this case, as to what will be sufficient evidence of a possession to enable the plaintiff to recover, is important to the whole town of *Kinderhook*, which has been possessed under the general patent.   The evidence produced showed, that the manner in which the lessors of the plaintiff took possession, had been invariably practised by the inhabitants, and it is fairly to be presumed, that this mode of designating the property of the different possessors, was sanctioned by the town meeting.   The fence which inclosed the tract was, emphatically, a *possession*-fence ; it is not evidence of a mere right of possession, but of an actual possession ; and when accompanied by the repeated acts of cutting wood, affords the only evidence of the possession of wood-land, of which the subject matter is susceptible.   But it also appears that the lessors of the plaintiff actually cultivated 170 acres of the tract.   All these acts established a reputation that the proprietors were the real possessors of the land ; and ought to prevail against a mere intruder, without any title.

2. The defendant claims under *Smith*, and must, therefore, be bound by his acts and declarations.   Six witnesses testified, that *Smith* confessed that he had entered under one of the lessors of the plaintiff.   Having admitted his tenancy, he is estopped from setting up any adverse or outstanding title in another.‡   The evidence of this acknowledgment of title was conclusive against the defendant.

‡ 1 *Caines*, 144.
See *Jackson*,
ex dem. *Dobbin*, ante, p. 223.

*Van Vechten* and *Foot*, contra.   When a plaintiff in ejectment sets up a possessory title, he must show it to be a

such a title as the law will recognise. Title implies right, and a person who claims by a possessory title, must show a right of possession. A defendant in ejectment who claims to hold by such a title, must prove an adverse possession of 20 years, to bar the plaintiff's right of entry ; such a possession being evidence of a legal title or fee.*

If proof of 20 years adverse possession is necessary to protect the defendant in his possession, then, e converso, such a possession is requisite to enable a plaintiff to recover on a possessory title ; for it would be absurd to allow a plaintiff to recover possession, on less evidence than would be sufficient to enable a defendant to retain it. Possession affords only a legal presumption of right, and the law has fixed a period, when it shall be considered as a *fee* or *title*. There is a naked possession, *sine aliquo vestimento*, as *Bracton* expresses it, unaccompanied with any title or claim of title. By such a possession no right is acquired, on which the party can maintain an action of ejectment.† The felling or lopping of trees was an arbitrary act, not done with reference to any right or title. Had the lessors of the plaintiff marked the trees round the land, it would have been equal evidence of a possession. Cutting wood is an equivocal act, and may be done by a trespasser, as well as by the owner. The case of *Jackson*, ex dem. *Hardenbergh*, v. *Schoonmaker*,‡ is strong and decisive on this point.

2. A mere permission to another to go on the land, without any agreement as to rent, will not amount to a tenancy. To constitute the relation of landlord and tenant, there must be a contract or agreement, as to the terms on which the land is to be held. It is true, one witness has said, that *Klaw* was to have twelve pounds a year, and pay for the improvements ; but there was no evidence that any rent was ever demanded or paid. Had there been any such agreement to pay rent, there would, no doubt have been some proof of a demand of rent, during near fifteen years.

NEW-YORK, Nov. 1808.

Jackson v. Scissam.

* Cowp. 597. Runnington, 14. 17.

† 2 Term Rep. 749. 1 East, 246.

‡ 2 Johns. Rep. 230.

3. The evidence as to the *Kinderhook* patent, was pro-́ perly rejected, as it merely concerned the rights and acts of third persons, and could not establish any right of the, lessors of the plaintiff against the defendant.

THOMPSON, J, delivered the opinion of the court. The confessions and acknowledgments of *Samuel Smith*, from whom the defendant derives his title, appear to be conclu- sive in this case, according to the principles repeatedly re- cognised in this court. From the testimony of one wit- ness, it appears that *Smith*, while he was in possession of the premises, told him that he settled there under *Lucas Goes,* and *Andries Klaw*, son of *William Klaw*. Another witness testified, that thirteen or fourteen years ago, when *Smith* first settled there, he was warned off by *Peter M. Van Beuren*, one of the proprietors, upon which, *Smith* told him, that he settled there under *William Klaw*, another of the proprietors. To another witness he acknowledged, that he settled on the premises under *William Klaw ;* that he was to have the same for six years, for twelve pounds ; and that *Klaw* was to pay him for the improvements at the end of the term. Similar declarations were made to a number of other witnesses. Here appears, then, to be a full and ample recognition of the title under which the les- sors of the plaintiff claim.

In the case of *Jackson*, ex dem. *Low*, v. *Reynolds*, (3 *Caines*, 444.) the proof was, that the defendant had con- fessed that he had entered without title, and that he had agreed to purchase from the lessors of the plaintiff the premises in question, as soon as the *Onondaga* commis- sioners should award the lot in which they were contained, to *Low*. Upon which, the court said, that the defendant had, *by his admissions*, recognised *Low* as his landlord, and could not, therefore, be allowed to dispute his title.

In the case of *Jackson*, ex dem. *Sagoharie* and others, v. *Dobbin*, (*ante*, 223.) the court decided the very point now in question. It is there ruled, that an act-

knowledgment by the defendant, that he went into possession under one of the lessors of the plaintiff, was sufficient to enable the plaintiff to recover. The same principle was fully recognised in the case of *Davies* v. *Pierce*. (2 *Term Rep.* 53.) It was there considered not as a new rule, but one long since settled.

In the case now before us, *Smith* was examined as a witness, and denied ever having made the acknowledgments imputed to him. Whether he or the other witnesses were most worthy of credit, was a question for the decision of the jury, and had they passed upon it, the verdict, perhaps, ought not to be disturbed. But the jury were expressly told, that the proof of *Smith's* tenancy was insufficient to entitle the plaintiff to recover. This broad direction was made on the ground, that *Smith's* acknowledgments, admitting them to have been made as testified on the part of the plaintiff, were not sufficient to entitle the plaintiff to a verdict.

In this respect, the jury was misdirected, and the verdict must be set aside. The costs are to abide the event of the suit.

VAN NESS, J. having formerly been concerned as counsel in the cause, declined giving any opinion.

New trial granted.